Thank Yeah. 14 1771 Labib Nouri individually and his next friend to a keen. Nouri Jacob Nouri Sammy Nouri Maria Nouri minors and were rwan nonary versus the County of Oakland and the Hazel police department at all oral argument as follows. 15 minutes for the plaintiff, 15 minutes to be shared by the defendants. Mr. Gappy for the plaintiff appellant. Good morning, your honors. Norton Gappy on behalf of plaintiff's appellants. Uh, appearing alongside with me is Brandon no far along with Dr and Mrs Nouri in our gal in the gallery joining us today. I'm going to reserve be reserving five minutes for rebuttal today. We're here today to ask you to uphold the law. It's this circuit has set it down over the years along with our Supreme Court. We're here today because a young lady decided to make a false accusation against the doctor that was later proven that she had perjured herself during his criminal proceedings. We're here today because while in the custody of the Oakland County Jail, Dr. Nouri received just about no medical attention. He was denied visitation from his minor children, his biological minor children. He was beaten, never given the proper follow up surgeries. By the time he reached the Michigan Department of Corrections, his teeth were noted to be rotting out of his mouth. And these are not things that happen overnight. He had broken nasal bones. He needed a bone graft in his jaw bone. He had abscesses that were never treated and all sorts of other injuries that never should have been allowed to get to the extent they were. And to compound that difficulty, he was arbitrarily denied any visitation with his minor children under an unconstitutional policy regarding minor visitation at the jail house. And just to put this in perspective, I wanna make a differentiation here between contact and no contact visitation as it applies to the Oakland County Jail. The Oakland County Jail, when they conduct a non contact visit, and I don't think I need to explain that to the panel, is the non contact visit is conducted in a building separate from the jail house itself, some yards away. The inmate never leaves the jail house and the visitors never enter the jail house. It's all done via video feed, closed circuit video feed. This is not a situation where minors are being tramped through the jail to go past other prisoners to get to the visitation quarters or anything like that. And they base their policy, at least one of them, on some confidential policy that they say they have in place regarding visitation. Mr. Gappy, you have 15 minutes. So if we try to bring some structure to this, you've got several different claims and you got a lot of different defendants. So what is... I would suggest, start with what's your main... What's your best complaint here? What's the cause of action you want us to start with and against whom? Well, I would say that the medical denial claims against Oakland County and Sheriff Bouchard, in addition to... And I don't know how you want me to parse this, along with the visitation claim, especially when it's viewed in light of Rule 8B6. Why don't you start with the medical claim and focus on... You're not gonna have time to do entire detail, but focus on the individual defendants that that most implicates. Okay. Well, the medical... Because when we look at it, we're gonna have to look at who did what when. Yes. We're not gonna be able to look at how he ended up. No, of course, Your Honor. Well, the medical claims implicate mostly Sheriff Bouchard and Oakland County regarding their policies. The fact of the matter is, and I'm not gonna go through every injury he suffered, but you see the... Well, with respect to Bouchard, where's the indication that Bouchard himself had knowledge of the deprivation of medical care? All the written cites and complaints and grievances that Dr. Nouri submitted under cases like Flannery V. Vaughn, which was Judge Adger's case also, indicate that the Sheriff had a duty to know when these cites and grievances were submitted, and he saw the ongoing denial of the medical treatment. Are you claiming that Sheriff Bouchard was actually aware of these cites, or are you saying he had a legal duty to be aware of them, whether he really was or wasn't? Under the case law, he had a legal duty to be aware of them. You concede that he did not have actual knowledge. I don't believe that he walked through the jailhouse. In what case are you relying upon that says he had a duty to make himself aware of every cite involving everybody in custody? Well, no, it's not every cite, everyone in custody. He's supposed to have people in place to make him aware when there's a deficiency, and it's Flannery V. Vaughn, okay, or I'm sorry, Leach V. Shelby. Are you attempting to allege individual liability on the part of Sheriff Bouchard? Well, in his official capacity... Individual liability as opposed to official capacity? No, it's gonna be an official capacity. Okay, that clarifies it. It's an official capacity suit. We're not looking at prospective injunctive relief, we're looking at damages. You have to show the same thing for Bouchard as you do for the county, and that's a policy practice customer procedure.  With respect to the medical care claim, aside from your reliance upon Leach, and Leach involved a case where the sheriff was personally aware of 14 prior incidences involving other people. So at that point, the sheriff was clearly aware, and we held that that's enough. Yeah, but Leach also made the distinction, and it's not... Leach also made the distinction that even if the sheriff didn't know, because of the grievances, he had a simply respondeat superior in another form, and can't possibly be the case, because when you read Leach, it doesn't turn on the fact that the person had a duty to know something or a duty of care under Tennessee law, much the way Bouchard does under Michigan law. I don't think anybody disputes that. No, I disagree, Your Honor. Section 1983 says, whatever you do or you fail to do has to have caused the injury. If you don't know about it, and therefore you don't take corrective action about something you don't know about, you can't have caused. That just seems elementary to me. So what am I missing? You're missing MCL 51.75. He had a duty to know what was going on in his jail. He had a duty to know that the prisoners or the inmates were being given the proper treatment. Other than Leach, have you found any case that says a county, a city, a township, village, I don't care what it is, and the decision maker is responsible for something they didn't know about because of a duty imposed by a statute under Section 1983? Gregory, Georgia, 428 U.S. 153, that in situations where you have a deliberate indifference such as this... Deliberate indifference always involves a concept of you knew about it. Well, and... What was the case you just said, Greg? Greg v. Georgia, 428 U.S. 153. What year is that? Does that have the year? 76. Okay. What's that? That's not the death penalty case, is it? No, I don't believe so, Your Honor. Okay. I don't believe so. All right. Well, Greg v... You said Greg versus Georgia for the proposition that deliberate indifference to serious medical needs constitutes the unnecessary and unwanted infliction of pain. There's no dispute about that. No. You can't be deliberately indifferent about something you don't know about. Most of the law with respect to municipal liability has really developed, I think, since 1976. But even still with the recent law, including Leach, including Flannery v. Bond... Okay, so you got Greg and Leach we've talked about. And what's your other case? Flannery v. Bond. Flannery. Okay. And MCL 5175, which imposes an affirmative duty on the sheriff. And Leach did stand for the proposition that he didn't know about Leach himself, but he should have known because of the mistreatment that was going on. Okay, Flannery says denial of dental care falls in the category of a serious medical need. Yes. Seems to me no question about that. What else does Flannery tell us that answers the question I asked? Well, Flannery also tells us that this denial, it should have been known, and it should have... By the jail personnel. Must be a different section than what you quoted from there. I couldn't obviously quote the entire case, but my recollection is it stood for the principle that these types... A denial of necessary dental requirements or needs need to be addressed for a serious medical condition. And this ongoing... And in Flannery, it was 337 days he was denied toothpaste, and that's all that was. And they should have known that something like this shouldn't have been allowed to happen. And that was only a denial of toothpaste for a period of a little under a year. And he began to develop rotting teeth, and they still found that that... Greg versus George is not your case. What's that? That's a case about upholding the death penalty. So Greg versus George doesn't help you at all. Well, I can still rely on Flannery V. Bond and Leach versus Shelby because those are directly... Read the cases before you cite them. It has nothing to do with this case. I could have sworn that was that one. My apologies. If there are no further questions... Let's assume you're not gonna get any... Well, your red light's on. You wanna ask him something now? No. Okay. You'll have your rebuttal time if you save some. Okay. I did, five minutes, Your Honor. Okay, fine. Good morning, Your Honors. Rick Patterson and I'm appearing on behalf of Oakland County, Sheriff Bouchard and Prosecutor Jarboe, who wasn't even mentioned during oral arguments, so I won't mention the prosecutor either. How long are you taking? I'm gonna take half the time and Brother Counsel will finish off, even though his clients weren't discussed during the oral argument. What are you? You're Oakland and... Oakland County, Bouchard, and then the prosecutor who he also appealed, didn't discuss today. Okay, simple question. Have you found any cases that impose an obligation on a county or a sheriff, based upon a statute that says they have certain obligations, for what happens in a jail that they didn't know about? Absolutely not. Have you read these cases that your brother counsel is citing us to? I did not. I've read the Leach case, obviously. There was no dispute that dental conditions can constitute a serious medical condition for purposes of denial of medical care, so I didn't bother to read that one, because I didn't dispute the premise that he cited it for. Are you even disputing that the... What Dr. Neary had happen to him, assuming that it's true, did violate his constitutional rights? The question is, who, if anybody, is responsible for that? Yeah, the failure here, without even reaching that aspect of it, the failure here is to identify a proper defendant. He had initially identified four individuals in the district court level. He didn't appeal the dismissal of those four individuals, because he couldn't tie any actions or conduct to them. The district court granted some of the dispositions, so on appeal, he essentially has taken the tact of, even though I only have official capacity claims left, I'm going to use the standards that apply to an individual capacity claim, and try to make the argument that I can still hold Sheriff Bouchard liable using the individual standards, despite the fact I don't have an individual claim against him. That's why he gets into the objective and subjective components of conditions of confinement and deliberate indifference standard. None of those have any application when you're dealing with a municipal liability claim or an official capacity claim. Those are, is there a policy, did that policy cause a constitutional violation, and did it cause damages here? He hasn't, he hasn't been able to establish anything along those lines. And to your judge, you pointed out earlier, simply what he's trying to do here is a respondent superior, which Monell rejected decades ago. So the only place to broaden our horizons a little bit here, where there actually was a policy, indisputably a policy, was the question about visitation. Correct. And your claim is this policy doesn't violate anybody's constitutional rights, it's been upheld as a legitimate, peniological interest when you have an inmate that's had disciplinary problems in the jail. Correct. The policy applied to maximum security inmates only. It essentially mirrored the situation in Overton versus Bezzetta, which the U.S. Supreme Court upheld the policy in that case. We've provided, you know, sworn testimony, setting forth the governmental interests as far as the administration of the jail, and why they're rationally related. You know, plaintiff's counsel continues to, you know, suggest that there's some distinction between a convicted inmate and a pretrial detainee, and that the old strict scrutiny, least restrictive means analysis somehow still applies in this case. I mean, that was, you know, overturned in 1979, you know, I think by Bell versus Wolfish, and it hasn't been the rule of law since that time, 35 years ago. Yet he still continues to rely on it to support the idea that the visitation policy that essentially has been upheld by the U.S. Supreme Court is somehow, it violates it because it's not, because it's being applied to a pretrial detainee. Can you speak to another point? I know that in Leach, you not only had instances of multiple problems over involving the particular inmate, but he was paraplegic, and you also had evidence about the treatment of other paraplegics in the jail. As far as I know, there's not anything like that in this case. Do you know of any case that has based official capacity liability on multiple constitutional violations involving the same plaintiff without any showing that it's of a more widespread nature? No, Your Honor. Actually, the proposition has been rejected by the federal courts. In order to establish municipal liability, you have to show essentially a pattern or practice of conduct. You cannot, it's Oklahoma versus, Oklahoma City versus Tuttle, I think is the Supreme Court case, that says you can't simply rely on the person's own circumstance to support a customer or to create a customer policy by the governmental entity. So, you know, and you mentioned Leach, obviously there was I think 14 other individuals who were similarly mistreated in that case that the court relied on those other circumstances to establish that there was some type of customer practice that could support municipal liability. In that case, in this case, we have none. We have the plaintiff's own situation that he complains about. He doesn't cite to any other inmate. He doesn't cite to anybody else other than his own situation, and given that and the complete lack of any connection to a policy other than the visitation policy, which I've already addressed, you know, that there's absolutely no basis to hold Oakland County or Sheriff Bouchard in his admitted official capacity. The plaintiff's counsel admitted that was the basis for his appeal. It's an official capacity claim. There's no basis for any liability on either one of those aspects. If the panel has any questions. It seems like if he really didn't receive any medical care, it looks like it probably would rise to a constitutional violation. Seems like he should be able to sue somebody, but he'd have to sue the individuals that actually denied the medical care and sue them in their individual capacity, right? Yeah, he would have to identify. The claim, I mean, some of what is the claim is against the individual caregivers or those who denied care. Absolutely. But I'm gathering you said that even with respect to the individuals, in your estimation, he sued the wrong ones. Well, he did not sue any nurse or any doctor or the dentist that works at or through the jail. He didn't identify those individuals as defendants. Well, it didn't have to be those individuals. If he never got to a correctional officers to whom he complained, it would be the people who were deliberately indifferent. The people who, you know, I mean, it would be whomever, but it'd be those people. Correct. If there was a denial of care, then it would be the individuals who the guards or whatever who denied him that care. If, and my, I want to clarify for the, for, you know, your honors that, you know, it's my, you know, position here that he did receive care. He's just complaining about the nature and extent of care that he received, which, you know, it, we don't ever get to that point because he doesn't identify the individuals that provided the care. But just, I don't want you to think that he was just ignored and sat in a cell for, for 10 months and he never saw anybody or he was never provided any medical care. That's not the situation. I understand that. I'm just saying if you accept his version that he told people and nobody ever did anything, there should be somebody he could sue for that. You're saying that didn't really happen because it's simply a level of care which doesn't generally rise to a constitutional dimension. Right. Doesn't, doesn't create deliberate indifference if there's a disagreement about the nature of care received. Okay. But in this case, he didn't even identify those individuals as defendants. We got it. Thank you, your honors. Mr. Klempner. Good morning. My name is Dan Klempner and I'm representing the remaining defendants, the Hazel Park defendants, which I'll refer to in that manner. May it please the court. My position, similar to my brother defense counsel's position, is in that the plaintiff has not necessarily identified a clear cogent claim against the Hazel Park individuals. Out of the gate, the case law is very clear that a police department in and of itself is not an entity capable of being sued. And even assuming for a moment that it is, that he is making a claim against the municipality proper, that Monell and Canton and that line of cases precludes liability under these circumstances. Who do you have, Mr. Klempner? You have Weimer? Lieutenant Weimer, now retired Lieutenant Weimer, Sergeant Detective Weimer at the time, and the Hazel Park Police Department. The city of Hazel Park was not named as a defendant at all. So a police department is not an entity capable of being sued. Moving on. There's a suggestion in the, in the, I think it's the briefs that, ah, that's no big deal. If you name the police department, you obviously mean to sue the city, so technicality. What's your response to that? Sure. Even if that is true, plaintiff has not demonstrated the pattern or practice to substantiate a Monell claim or substantiate a claim against the municipality under Section 1983. Well, at least he's trying to tell us what the policy is, isn't he, with respect to Weimer, and that's a failure to train claim? If that is what he's asserting, it wasn't clear, but if you'd like me to address it in that context, I'm just asking you, I'm just asking, was I reading that correctly? I don't think so. I don't think that he's even alleged that, but if he is suggesting that it's a failure to train him in proper investigative techniques, he's not identified the deficiencies, certainly not identified where that was the moving force of any sort of violation or constitutional violation against his client. The city or the police department trained its officers to take a and that's exactly what the lieutenant did. Well, I think, if I understand it right, he's basically saying that Weimer shouldn't have believed the complaining witness and should have done more than he did. That's correct. It's almost like a malpractice case. So anything you want to say about that that isn't in your brief? Certainly not, no. There's just a piggyback on it. It's basically that even if that's what he's saying, that Weimer did a shoddy job and he should have done something differently. That doesn't rise to a constitutional violation and that's not even what the law requires anyway. Under Ollers, the victim's statement in and of itself is sufficient absent any other sort of evidence that she or he is not credible. In addition to that, I would like to point out a few of our purely legal defenses under Heck and under the collateral estoppel that because Dr. Norrie pled, even though it's a NOLO plea, because he pled no contest to the underlying factual basis of unconsented touching, that if the court here today were to imply the invalidity of that plea, it would violate the Heck doctrine and therefore it's not appropriate. The same reason collateral estoppel and a similar reason precludes the court from undermining that underlying stipulation in the NOLO plea. Just very briefly if I can address that. Could I ask you a sort of a follow-up question to that? There seems to be an attachment of the phrase probable cause to what Weimer did or did not do, which is normally something that we would assign to the question of a warrantless arrest or maybe if Weimer was actually involved in the to then find out if he violated it, rises to a constitutional dimension, was or was not clearly established. Certainly. The Fourth Amendment is what controls here and it's the qualified immunity standard, but certainly laws be clearly established and here it was. We're not saying that the Fourth Amendment is... Essentially a plaintiff has to prove, if the plaintiff is seeking to infect a malicious prosecution claim, although you know in constitutional garb, it doesn't matter whether it's the prosecutor, i.e. the lawyer or the investigator. I mean, aren't the elements still the same? Well, there has to be some demonstration that Weimer was somehow involved in it. He'd handed over the investigation to the prosecutor. Let me put it another way. You don't have to have probable cause to do an investigation. That's correct. You just have to have a complaint. You're exactly right. I assume there's some sort of standards that govern your conducting an investigation. You can't turn in knowingly false information, for example, to the prosecutor who then relies upon it. Certainly. You can't withhold exculpatory evidence. There's no limit. So the involvement in the prosecution would come from handing over the file. It's not necessary that he have been the individual who made the decision to prosecute, but doesn't the probable cause element come into it as a part of the elements of the malicious prosecution cause of action? I mean, you don't have to have that to initiate an investigation, I know. Certainly, but well... How do you understand him charging Weimer to have done? That's precisely part of my problem. Generally speaking, that he didn't do enough. The plaintiff asserts that Weimer didn't do enough, but I don't know still to this day what he should have done more. It's a very murky and broad assertion against Lieutenant Weimer. It's basically that he should have done some type of DNA testing on his own, which is practically impossible under the circumstances, and he should have investigated something else more so, but that was never specifically defined. So I'm left with this assumption that the investigator should have done more, and without knowing that, all I can tell you is what he did. He followed up leads, he conducted a number of interviews, he grabbed a few phone records, turned them over, reviewed the dictation records, contacted the CEO of the company, and essentially that he never... Do you want to take a minute to confirm? Sure. Yeah, I'm sorry I'm being this obtuse, but... Well, now, wait a minute. This is his time to talk. I'm encouraging you to whisper to each other, but not you to talk to us, Mr. Patterson, but you don't have to sit down. Just go and find out what he's trying to tell you. Sorry, I thought that I addressed that, but the standard is whether or not they falsified the case, presented false evidence at all, or whether they produced evidence to... Or failed to produce... Well, we've already talked about that. Yes, yeah, I'm sorry. I thought I was... Sorry to dance around it. I should have been more direct. I'm sorry we got you a little off track, too. Not at all. I've seen that happen. I've seen that happen when co-counsel whispers so loudly that the court can hear. I'm not suggesting that's your course of action, Mr. Patterson. I'm not full of pride. I would have happily punted if needed be, but thank you for your time. Okay. Mr. Gaffney, you ready to go? Sorry, Honor. I want to address a couple of things. Actually, I kind of misunderstood your question out of the gate. The claims as captioned in the complaint are claims in their personal and official capacities. I've captioned them against all the individual parties, including Sheriff Bouchard. And to back up, I kind of want to address things backwards now, if that's okay. As far as what Weimer did during all this, a couple of things he could have avoided. One is that misleading testimony he gave on the stand regarding DNA testing. The testimony that was quoted in the brief regarding when he was asked, did any DNA testing, was there any DNA testing that came back? He said, no, nothing came back, implying there was some sort of DNA testing done, but the results came back negative, when in fact, there was no DNA testing done. Another thing he could have... Wait a minute. So you're saying there's a constitutional violation by testifying incompletely under oath on a witness stand? How about misleadingly under oath on a witness stand? Well, you can characterize it any way you don't see any immunities from how you testify under oath? No. His obligation as a detective is to provide... Well, wait a minute. Wasn't he subject to cross-examination? And whether or not there was DNA testing was something that Dr. Nouri's counsel would have known. So I don't see how there was a potential for misleading the jury if he said something that left ambiguous the question of whether the testing had, in fact, been done. It's part of the overall pattern of how this was conducted. I mean, he took as... You have a limited period of time here. So is that what you want us to concentrate on with respect to the detective, how he testified? With respect to the detective, he never developed a proper probable cause to even file these charges against the prosecutor. The fact of the matter is, he never delved into... Wait a minute. Now the investigator has to have probable cause before he turns over the results of his or her investigation to the prosecutor who then makes the assessment whether to go get a warrant? No, but he needs to at least provide her with all the evidence, which he left out phone records that were exculpatory when he turned over the file. One of the phone calls that was left out that you found a single case that's even close to imposing liability on a police officer for what you're talking about here? When it comes to their duties, a police officer... Just give me the case. I would say Q-O-V Burtis, K-U-E-H-L-V-B-U-R-T-I-S-1-7-3-F-3-6-4-6. I think that stands close to the proposition that... Okay, that's good. I don't want to take up all your time. Okay. Additionally, when we talk about patterns such as in Leach, we're stuck on these patterns that this must be across multiple people. In Maryville, there may have well been multiple people that didn't get the medical treatment in that jail, but he had a pattern of reporting and the doctors diagnosing, and this is all in his records, diagnosis by a dentist, diagnosis by doctors, diagnosis at the osteopath. He had a pattern of these grievances that went on and on and on. You got to get that to a responsible decision maker, in this case, the sheriff. How do you get that to the sheriff? That he could... Look, the sheriff can't expect to be at the jailhouse every day looking at every cut, but he has people in place to do that for him. They should be informing him of what's going on. Otherwise, what's the point of the hierarchy? He is not responsible for their activities under a theory of respondeat superior. The law could not be more crystal clear about that. Can you answer this question for me? Can you cite for me a case that bases official capacity liability on a course of neglect or a course of deliberate indifference involving a single individual, even if it occurs more than once? A single individual... But the pattern at issue, such as in Leach and MCL 51.75... Leach is very, very different. There are cases where people have... Inmates have died. It is about one individual, but those are all cases where the officer that was sued knew. That's Judge McKeague's point. He's also... It's about the overall safety of the jail that he's responsible, the overall... And that's what the statute imposes under Michigan, the safety, the medical treatment, the food, so forth and so forth that he acknowledges. And as far as the visitation, I'd also... I'd fall back on my 8B6 argument. I realize I'm out of time. And the fact of the matter is that even an Overton court and its de facto permanent... It wouldn't go for a de facto permanent ban. We seem to have created a rash of past legal bans. Because, I mean, in Overton, they had a structured policy... Well, look at what he said and then finish up very quickly. Well, in Overton, they had a structured policy saying this number of... For this violation, X number of days without a visit. They don't have that here. It's arbitrary, just whenever the sergeant decides. And that maybe it may happen. And this went on for years, despite requests, despite his wife wanting to bring the children, it never occurred to them that they may have to do it. And it's a constructive one. Thank you, Your Honor. Thank you. All right. We'll consider very carefully the arguments all of you have made. And we thank you for your argument. Thank you, Your Honor.